IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HENRY J. ROBINSON, | § | |
| | § | |
| Plaintiff, | § | Case No. 03:09-CV-1203-O |
| | § | |
| v. | § | |
| | § | |
| RADIO ONE, INC., and | § | |
| RICKEY SMILEY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER ON
## DEFENDANT RADIO ONE'S MOTION TO DISMISS

Before the Court are Defendant Radio One's[1] Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Petition for Failure to State a Claim with Brief in Support (Doc. # 3); its Appendix in Support (Doc. #4); Plaintiff's Response (Doc. # 11); and, Radio One's Preliminary Reply and Motion to Strike Plaintiff's Untimely Response, with Brief in Support (Doc. #12).

As an initial procedural matter, the Court takes up the issue of what is properly before it on the Motion to Dismiss. Having reviewed Radio One's Motion to Strike Plaintiff's Untimely Response, and authorities cited therein, the Court **GRANTS** that motion and strike's Plaintiff's Response as untimely.[2] Turning then to what is before the Court, for reasons stated below, the Court **GRANTS** Defendant Radio One's Motion to Dismiss solely insofar as it requests

---

[1] Defendant Radio One of Texas II, LLC, points out in its Motion that it has been incorrectly named as Radio One, Inc., in Plaintiff's Complaint. Def.'s Mot. at 1. "Radio One" refers to this Defendant throughout this Order, consistent with usage in the Motion itself. *See id.*

[2] Even if it were to be considered, Plaintiff's Response would not have affected the outcome established by this Order. For example, the arguments therein are consistent with the most reasonable construction of Plaintiff's Complaint, that its claim is premised solely upon a radio broadcast as the completed defamation, treating an incident at Love Field Airport in Dallas, Texas, as a precursor and as context, rather than another instance of defamation by Radio One.

dismissal of any claim against it from a specific incident that occurred at Love Field Airport in Dallas, Texas. The Court **DENIES** Defendant Radio One's Motion to Dismiss as to claims made against it based on a radio broadcast in which Plaintiff alleges he was defamed.

## I.   BACKGROUND

At one time, Plaintiff worked as a security guard at Love Field Airport ("Love Field") in Dallas, Texas. Pl.'s Compl. at 3, ¶ 11. Defendant Radio One owned a radio broadcast station known as "The Beat" that broadcast on frequency 97.9. *Id.* The Beat featured a program called *The Rickey Smiley Show*. *Id.*

The eponymous Rickey Smiley encountered Plaintiff on the job at Love Field in February, 2009, as he got off a flight. *Id.* Several people asked Smiley to take pictures with him, and he agreed. *Id.* Plaintiff approached him, and initially all was well. *Id.* ¶ 12. According to the further allegations, though, when Plaintiff asked for a second photograph with Smiley, Smiley became abusive, calling him "the gay security guard" and "faggot." *Id.* Other people, "colleagues and noncolleagues alike" of Plaintiff then joined in. *Id.* Smiley told Plaintiff he was going to put him "on blast," which Plaintiff understood to mean Smiley would refer to him during a broadcast. *Id.*

During a broadcast "[s]everal days later," per Plaintiff's allegations, Smiley "made reference to Robinson by name, again calling him 'the gay security guard.'" *Id.* ¶ 13. After that broadcast, people began calling Plaintiff "gay." *Id.*

## II.   LEGAL STANDARD

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly,* 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).  The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Iqbal*, 129 S.Ct. at 1949-50.  When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief.  *Id.*

In ruling on a motion to dismiss under 12(b)(6), the Court cannot look beyond the pleadings.  *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## III.  DISCUSSION

Plaintiff has brought a defamation action. Generally, as a non-public figure, Plaintiff must prove that Defendant: (1) published a statement of fact (as opposed to opinion); (2) which

was defamatory concerning Plaintiff; (3) while acting with negligence;[3] and, (4) the statement was false. *WFAA-TV, Inc., v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998); *Crouch v. Trinque,* 262 S.W.3d 417, 425 (Tex. App. – Eastland 2008, no pet. h.); *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App. – Tyler 2008, no pet. h.); *see also* SACK ON DEFAMATION § 2.1. "Defamatory" means an ordinary person would interpret the statement in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach the person's honesty, integrity, virtue or reputation. In deciding whether a statement is defamatory, one must consider the context of the publication as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it. *Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 91 (Tex. 1992).

Context is key because the initial inquiry for any court in determining whether a defamation action is well-pled must determine if "the words used [were] reasonably capable of a defamatory meaning."*New Times, Inc., v. Isaacks,* 146 S.W.3d 144, 155 (Tex. 2004); *Musser v. Smith Protective Servs.,* 723 S.W.2d 653, 655 (Tex. 1987) (citations omitted); *Gumpert v. ABF Freight Sys..,* 293 S.W.3d 256, 264 (Tex. App. – Dallas 2009, pet. denied). Courts must initially consider "the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Isaacks,* 146 S.W.3d at 154; *Musser,* 723 S.W. at 656 (citations omitted). This hypothetical listener "exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications."

---

[3] "Broadly stated, the negligence test permits recovery on a showing that in publishing a defamatory falsehood the defendant knew, or in the exercise of reasonable care should have known, that the statement was false or would create a false impression in some material respect." SACK ON DEFAMATION § 6.2.1.

*Isaacks,* 146 S.W.3d at 157.

An assertion may be defamatory *per se,* SACK ON DEFAMATION § 2.4.4, while another may be found as a matter of law to be incapable of defamatory meaning under an objective standard of reason. *See, e.g., Busch v. Viacom Intern., Inc.,* 477 F.Supp.2d 764, 775-76 (N.D. Tex 2007). However, if neither is true, then the assertion "is ambiguous or of doubtful import" and must be submitted to a jury to determine its meaning and what effect it would have heard by persons of ordinary intelligence. *Turner v. KTRK TV, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000); *Musser,* 732 S.W.2d at 656; *Pisharodi,* 116 S.W.3d at 862. As the Texas Supreme Court has noted:

> This is not the same as asking whether all readers actually understood the satire, or "got the joke." Intelligent, well-read people act unreasonably from time to time, whereas the hypothetical reasonable reader, for purposes of defamation law, does not. In a case of parody or satire, courts must analyze the words at issue with detachment and dispassion, considering them in context and as a whole, as the reasonable reader would consider them.

*Isaacks,* 146 S.W.3d at 158.

Plaintiff denies that he is homosexual. Pl.'s Orig. Pet. at 3, ¶ 13. In Texas, the imputation of homosexuality has historically been defamatory *per se* as it imputes the crime of sodomy. *Plumley v. Landmark Chevrolet, Inc.,* 122 F.3d 308, 311 (5th Cir. 1997). False imputation of criminal behavior is *per se* defamatory. *Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex. 1984); *Christy v. Stauffer Publications, Inc.,* 437 S.W.2d 814, 815 (Tex. 1969).

Indeed, a concurring opinion raised that point as the United States Supreme Court overturned the Texas sodomy statute in 2003. *See Lawrence v. Texas,* 539 U.S. 558, 584 (U.S. 2003) (J. O'Connor, concurring). No case appears to address whether imputation of homosexuality

continues to be defamatory as a matter of law in the wake of *Lawrence.* At a minimum, though, judicial caution requires the Court to acknowledge that the imputation of homosexuality might as a matter of fact expose a person to public hatred, contempt or ridicule.[4] At this stage, the allegation is sufficiently well pled to warrant discovery.

### 1.   The Broadcast

The Court turns to consider whether this *particular* statement is reasonably capable of a defamatory meaning as made in the context alleged. Radio One's defense is that the context was one of obvious fiction; that the segment was parody or satire.

Radio One does not deny a broadcast that asserted there was a "gay security guard" at Love Field, of course, but does deny that the broadcast identified Henry Robinson as that person. Radio One has incorporated by reference a clip of the broadcast lasting one minute and forty-eight seconds.[5] The clip includes, from various on-air personalities, a reference to "Henry" working at Love Field, a poem about "Henry, Henry" who "sure act[s] gay," off color humor about "Henry's" duties in conducting personal searches, an admonition to "Henry" to stop taking pictures, and a laughing "Sorry, Henry!"

---

[4] The question of *Lawrence's* possible impact on *Plumley* was not addressed by either party. The issue is indeed a complex one, ripe for the clarification that comes from allowing litigation to proceed rather than the imposition of a single judge's view. *See e.g.* Eric K.M. Yatar, *Defamation, Privacy, and the Changing Social Status of Homosexuality: Re-Thinking Supreme Court Gay Rights Jurisprudence,* 12 LAW & SEX. 119, 151-58 (2003); *see also* Patricia C. Kussmann, *Imputation of Homosexuality as Defamation,* 7 A.L.R.6th 135 (2005).

[5] The clip is verified by David G. Smith, Director of Operations for *The Rickey Smiley Morning Show.* Doc. 4, at 4 ("Smith Affidavit"). Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins,* 224 F.3d at 498-99. *See e.g.  Busch.,* 477 F.Supp.2d at 776, n.6 (Court may consider a clip of the broadcast in which defamation was allegedly made that is attached to defendant's response).

From that brief clip, a reasonable listener could well conclude that the broadcast is referring to a real person, not a comic character, who was a security guard named Henry working at Love Field.[6] Further, nothing in the clip suggests parody or satire, which involve mis-characterization or exaggeration. An assertion is not necessarily parody or satire simply because it was made to provoke laughter. A leading treatise notes:

> There is no question but that the use of humor to make a defamatory point can give rise to a cause of action: "The principle is clear that a person shall not be allowed to murder another's reputation in jest.""If a man in jest conveys a serious imputation, he jests at his peril." At the same time, though, "[t]here is no libel where . . . the material is susceptible of only non-defamatory meaning and is clearly understood as being parody, satire, humor, or fantasy." In much humor, the joke has a "butt." "The law of defamation requires . . . reasonably cognizable harm to the butt's real-world reputation."

SACK ON DEFAMATION § 2.4.11 (citations omitted).

Radio One does not represent that the clip is anything more than "an excerpt" of the February 11, 2009, broadcast. The Smith Affidavit does not exclude other possible references to "Henry" the "gay security guard" during that broadcast or others. The Court does not, of course, have an opinion on whether the clip presents everything that was broadcast or not. However, for purposes of a Rule 12(b)(6) determination, the Court is bound to note that Robinson has alleged that "Henry the gay security guard" was identified in sufficient detail that "[a]fter the airing of the show, people began accosting Robinson calling him gay ...." Pl.'s Orig. Pet. at 3, ¶ 13.

---

[6] Defendant describes a program similar to a variety show with sketches that are obvious fiction. *See* Def.'s Motion at 6-7. The segment presented for consideration seems more like that of a morning "drive time" show that attempts humor, without obvious fiction. The Court can only determine the efficacy of Plaintiff's pleadings based on what has been alleged, and the clip before it in response. In any event, the various types of activity that occur in the course of the program do not matter; what matters is the specific statement featuring Plaintiff, and whether any defamatory assertions made are reasonably susceptible to belief as fact.

Defendant also contends that Robinson's last name was not used. However, it is not necessary that a defamation plaintiff have been named at all in the publication. *Allied Mktg. Group v. Paramount Pictures Corp.,* 111 S.W.3d 168, 173 (Tex. App. Eastland 2003, pet. denied) (citing *Newspapers, Inc. v. Matthews,* 339 S.W.2d 890, 894 (Tex.1960)). Indeed, it is possible to defame someone without knowing (s)he exists. *Allied Mktg. Group,* 111 S.W.3d at 173 (citations omitted). The true test is whether persons who know the defamed and heard the statement could have reasonably thought it to be an assertion of fact about him. *Id.*

The most closely analogous case the Court has found is *Diaz v. Rankin,* 777 S.W.2d 496 (Tex.App.-Corpus Christi Aug 31, 1989, no writ). *Diaz* involved a radio program called *The Davis Rankin Morning Show.* During an interview about a golf tournament at the course owned by the plaintiffs, the host asked whether participants would "have to go up there and play with dope dealers." *Diaz,* 777 S.W.2d at 498. He did not mention anyone's name or description – this appears to have been the only offending statement. *See id.* Based on a single affidavit from a listener who said he understood the remark to refer to the golf course owners – the plaintiffs – the *Diaz* court found that Rankin's words were "reasonably capable of a defamatory meaning" and that "a jury should be permitted to determine the statement's meaning and the effect the statement had on the ordinary listener." *Id.* at 499 (citing *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex. 1987)).

For its satire defense, Radio One relies heavily on the leading case of *New Times v. Isaacks*. *Isaacks,* 146 S.W.3d 144. In *Isaacks,* the column in a Dallas publication noted for irreverent humor about public officials published a fake news item ridiculing the district attorney and a judge in Denton County, Texas. *Id.* 146 S.W.3d 147-49. *Isaacks,* however, turns on

whether a person of ordinary intelligence would have recognized that particular article as a whole to actually *be* satire. *Id.,* 146 S.W.3d at 157. It does not stand for the proposition that any defamation claimed to be satire is immune from that test. In finding that the article was a patent parody, the Texas Supreme Court detailed seven specific items within the statement that would alert a person of ordinary intelligence to the satirical nature of the piece. *Id.*, 146 S.W.3d at 158.

Likewise, the Court finds only superficial similarities in the case of *Gumpert v. ABF Freight Sys.,* 293 S.W.3d 256, 264 (Tex. App. Dallas 2009, pet. denied). Although the plaintiffs there had been satirized as homosexual by anonymous notes from co-workers, "[n]one of the publications could be understood as conveying actual facts about" them. *Gumpert,* 293 S.W.3d at 266-267 .

Defendant's reliance on *Busch* is similarly misplaced. *See Busch,* 477 F.Supp.2d 764. *Busch* turned on the finding that the fact that the plaintiff's image appeared in an obvious parody – the target of which was a public figure with the plaintiff – could have caused "no reasonable viewer" to believe the clip made assertions of fact about the plaintiff. *Busch,* 477 F.Supp. at 776. Indeed, the plaintiff in *Busch* had failed to even allege that the broadcast made assertions of fact about him. *Id.*

## 2.   __The Love Field Precursor__

Distinct from the broadcast, Radio One says that Plaintiff has failed to state a claim against it as to any defamatory statements made by Smiley at Love Field because it cannot be held accountable, nor a part of the individual's publication (if any), in that particular incident.

Reviewing Plaintiff's pleadings, the Court indeed cannot determine that any claim has actually been made. The pleadings may more reasonably be read as stating those facts as a

precursor to the broadcast, and as part of the context of the broadcast's reasonable construction. Certainly, there are no factual allegations here that constitute a claim against Radio One. If indeed Plaintiff intended to state a case against Smiley for statements made at Love Field, this can be taken up at an appropriate time.

### IV.    CONCLUSION

The Court **FINDS** that if Plaintiff intended to state a claim against Radio One solely for statements made by Defendant Smiley at Love Field Airport, he has failed to do so.

The Court **FINDS** that Plaintiff has pled enough facts in his complaint that it is plausible on its face that Defendant Radio One negligently broadcast a statement of fact defamatory of Plaintiff, and that the fact was false. The statement as described in the pleadings was reasonably susceptible to being interpreted as factual and defamatory, which requires further discovery to make a final determination of the matter by later dispositive motions or eventual submission to a jury.

### V.    ORDER

Defendant Radio One's Motion to Strike Plaintiff's Untimely Response is **GRANTED** and Plaintiff's Response is stricken. It will be retained of record only and its substance has not been considered here.

Defendant Radio One's Motion to Dismiss is **GRANTED** solely as to any liability for statements made by the co-Defendant at Love Field Airport.

Defendant's Motion to Dismiss is **DENIED** as to the claims stated arising from the *Rickey Smiley Show* broadcast of which complaint has been stated.

**SO ORDERED** this **19th** day of **FEBRUARY, 2010.**

- 10 -

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**